UNITED STATES, Appellee

v

ROBERT L. SMITH, Specialist Third Class,
U. S. Army, Appellant

9 USCMA 240, 26 CMR 20

No. 10,715

Decided May 9, 1958

*Major Edward Fenig* argued the cause for Appellant, Accused.

*Lieutenant Colonel John G. Lee* argued the cause for Appellee, United States. With him on the brief was *First Lieutenant Jon R. Waltz*.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was found guilty of four separate offenses arising out of the operation of a motor vehicle while he was stationed in Germany. Specifically, they were driving an automobile without a driver's license and failing to report an accident, contrary to the provisions of a United States Army, Europe, general regulation, in violation of Article 92 of the Uniform Code of Military Justice, 10 USC § 892; fleeing the scene of a vehicle accident, contrary to Article 134, Uniform Code of Military Justice, 10 USC § 934; and involuntary manslaughter proscribed by Article 119, Uniform Code of Military Justice, 10 USC § 919. He was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for five

240

years. Both the convening authority and a board of review approved the findings but each reduced the forfeitures and confinement so that as the case reached us the accused is under sentence of a dishonorable discharge, total forfeitures, and confinement at hard labor for two years. We granted a petition for review to determine whether that portion of the United States Army, Europe, regulation requiring the reporting of an accident is valid.

A short statement of facts is in order to put the issue in its proper perspective. The accused's license to drive had been suspended but, because a companion, the owner of the vehicle, became intoxicated, the accused consented to drive some girl companions from a military post to their homes. Within a relatively short distance from the post, the automobile struck and killed a pedestrian who was walking on the edge of the road. Evidence disclosed that the accused was driving in a culpably negligent manner and that he neither stopped nor subsequently reported the accident. He now vigorously attacks his conviction for failing to report the accident and supports his assault by contending that the provision hereinafter quoted is mandatory in nature; that it does not grant immunity to the reporting operator; and that it does not prevent the report from being used as evidence in any subsequent criminal prosecution—for all of which reasons the regulation violates his right against self-incrimination granted by Article 31(a) of the Uniform Code of Military Justice, 10 USC § 831.

The part of the regulation relevant in this dispute reads as follows:

"3. The operator of any motor vehicle involved in an accident resulting in injury or death to any person or property damage to an apparent extent of 50 dollars shall immediately report the matter, by the most expeditious means, to a duly authorized US law enforcement officer." [Paragraph 3, Article 8, Annex A, USAREUR Circular 643–30, Operation of Privately Owned Vehicles in Germany, September 7, 1955.]

As a starting point, we suggest certain hypotheses which are beyond dispute. For legitimate reasons, the United States Army in Europe could prohibit the operation of privately owned vehicles by Army personnel in West Germany. Conceivably, the power to prevent their use might be found in military necessity, but in this case we need not consider that theory because of a certain agreement entered into by the United States, the United Kingdom, and the Republic of France with the Federal Republic of Germany. These Allied Powers specifically retained the right to license their own military operators of private motor vehicles, to require the registration thereof, and to provide for appropriate identification. To support this conclusion, we quote from the official agreement:

"4. The vehicles, . . . of the Forces *or their members* may be licensed or registered, and shall be provided with license plates or other identification as appropriate, by the authorities of the Forces.

.    .    .    .    .

"6. Documents issued [sic] by the appropriate authorities of the Power concerned to a member of the Forces which authorized him to operate vehicles, seagoing vessels or aircraft shall be valid in the Federal territory." [Protocol on the Termination of the Occupation Regime in the Federal Republic of Germany, October 23, 1954, 6 U. S. Treaties and Other International Agreements 5618, TIAS No. 3425. Emphasis supplied]

As one of its obligations under the Pact, the United States undertook to provide safety measures respecting the operation of private vehicles in West Germany and to police their operation. The United States Army, Europe, regulation with which we are now concerned was promulgated to implement the Treaty rights and obligations of the United States. It contains a number of provisions dealing with motor vehicles but for our purposes, it is sufficient to note that it governs matters which are the subject of all but a very

**241**

few state statutes which have for their purpose the control of traffic on the highways. Therefore, we believe the civilian cases dealing with the right of a state to require a driver to report an accident offer us legal and logical precedent for holding this regulation valid.

A quick check of the state statutes discloses that approximately forty-five states and the District of Columbia have enactments which require a driver of a motor vehicle to identify himself or report an accident either involving a stated amount of damage or resulting in personal injuries to an individual. If the theory advanced by the accused in the instant case is tenable, then the District provision is violative of the Federal Constitution and the other statutes are contrary to the state constitutions which, in almost every instance, grant to their citizens a privilege against self-incrimination. But, unfortunately for him, our research of the decisions convinces us that the courts of last resort of all states which have passed upon the question have uniformly supported the principle that a defendant has no right to claim a constitutional privilege against failing to report an accident in which he is involved while driving an automobile within the state. But see Rembrandt v City of Cleveland, 161 NE 364 (Ct App Ohio) (1927).

In the early case of People v Rosenheimer, 209 NY 115, 102 NE 530 (1913), the New York Court of Appeals considered the constitutionality of a statute which, for all practical purposes, was identical with the regulation here involved. The inferior courts had held the statute void on the grounds that it contravened the privilege against self-incrimination found in the New York Constitution. The highest appellate court of that State reversed and in the course of its reasoning the court conceded that the statutory requirement undoubtedly caused a driver to make known a fact which might be a link in a chain of circumstances leading to his conviction of an offense. The court found that circumstance to be of no legal consequence in view of the fact that the legislature had the power to prohibit the driving of motor vehicles and that the power to prohibit necessarily included the authority to attach certain conditions to the granting of permission. The language of that court on this subject is this:

". . . in operating a motor vehicle the operator exercises a privilege which might be denied him, and not a right, and . . . in a case of a privilege the Legislature may prescribe on what conditions it shall be exercised. [Citing the leading case of Ives v South Buffalo Ry. Co., 201 NY 271, 94 NE 431, 34 LRA (NS) 162, Ann Cas 1912B, 156.]"

A forerunner to this case, and one cited with approval by the New York Court, is Ex parte Kneedler, 243 Mo 632, 147 SW 983 (1912). In that instance, the Supreme Court of Missouri upheld the validity of a statute requiring the giving of information to an injured party or reporting the accident to the nearest police station. The court there stated:

"Common observation and experience show that unrestricted use of motor vehicles on public streets would be extremely dangerous to life and limb and the property of the public. Their use thus becomes a fit subject for state regulation. Every person who operates or uses a motor vehicle must be regarded as exercising a privilege, and not an unrestricted right. It being a privilege granted by the Legislature, a person enjoying such privilege must take it subject to all proper restrictions."

The Supreme Court of Kansas in State v Razey, 129 Kans 328, 282 Pac 755, announced the same principle. That court stated the rule in the following language:

"Defendant challenges the constitutionality of the statute in so far as it requires a person who in the operation of an automobile injures another person to stop and give the information outlined in the act. She invokes that provision of section 10 of the Bill of Rights which declares that: 'No person shall be a witness against himself.' She argues that this constitutional guaranty is vio-

lated by the statutory obligation imposed on a motorist who causes injury to a person on the highway to stop and give his name, residence, motor license number, and any other information demanded, to the injured person or others present, and to report the incident to the sheriff or nearest police officer. We cannot assent to that. The requirements of the statute are proper police regulations necessitated by the use of motor vehicles on the highway. The information which a motorist who causes injury to another is required to give is information pertinent to the accident, not irrelevant information. Defendant's privilege of operating an automobile on the streets of Wichita was conditioned on her obligation to stop and give the statutory information and report the injury to the proper public officer. This condition was binding upon defendant as upon all who accept the privilege of operating motor cars on the public highways."

In State v Sterrin, 78 NH 220, 98 Atl 482, the Supreme Court of New Hampshire reached the same result on substantially the same reasoning, for it stated:

"The defendant also claims that the statute is unconstitutional, in that it requires him to furnish evidence which might be used against him in a criminal proceeding. Bill of Rights, art 15. The same question has been raised in other states, and in each the conclusion has been reached that the statute is valid. People v Rosenheimer, 209 NY 115, 102 NE 530, 46 LRA(NS) 977, Ann Cas 1915A, 161; Ex parte Kneedler, 243 Mo 632, 147 SW 983, 40 LRA(NS) 622, Ann Cas 1913C, 923; People v Diller, 24 Cal App 799, 142 Pac 797. In each of these cases it is pointed out that the operation of an automobile upon the public highways is not a right, but only a privilege which the state may grant or withhold at pleasure (Commonwealth v Kingsbury, 199 Mass 542, 85 NE 848, LRA 1915E, 264, 127 Am St Rep 513), and that what the state may withhold it may grant upon condition. One con-

dition imposed is that the operator must, in case of accident, furnish the demanded information. This condition is binding upon all who accept the privilege."

While enactments of this kind would seldom, if ever, be directly in issue in a case brought in a Federal court, they have been acknowledged as a valid exercise of legislative authority. In United States v Field, 193 F2d 92 (1951), Judge Clark, speaking for the members of the Court of Appeals for the Second Circuit stated:

"It is not a new thing to hold that the privilege [against self-incrimination] may be limited in various ways by a previous obligation otherwise assumed. Examples of limitations validly set upon its exercise are found in the various requirements for the disclosure of information set by the state as a correlative of the pursuit of certain activities. Thus doctors must report deaths and their causes, druggists must show their prescription lists, mine owners must report details of accidents in their mines, and motor vehicle operators must report details of collisions on the highway."

The citation of further civilian authorities would be the work of supererogation, so we pass on to consider one other assertion advanced by appellate defense counsel. He presses on us the argument that the law is drifting away from the rule announced by the authorities cited above because some state legislatures have included provisions in their laws to the effect that the report shall be treated as confidential. Aside from the fact that those partial immunity provisions are merely covenants which liberalize the terms upon which the privilege to operate a car may be granted, the contention is irrelevant and premature in this setting. It may be that if the Government attempts to use any information contained in a report in a subsequent criminal prosecution—a matter which we do not decide—an objection based on the privilege extended by Article 31 would be appropriate. However, it is obvious that the Government here could not use

any such evidence against this accused, for he failed to submit any report. What he seeks to do is skirt around the periphery of the area covered by the statute and claim the privilege which might be his if he had entered. Cf. Gundling v Chicago, 177 US 183, 44 L ed 725, 20 S Ct 633 (1900). At most, the protection given to an operator of a motor vehicle by statutes which grant partial immunity is this: He is not relieved from reporting the accident and furnishing the necessary information, but once he complies, the use of the information furnished by him is barred from subsequent use in court. That is no more than a limitation of the extent to which a driver must waive his right to assert the privilege, and if a legislature deems it advisable to narrow the waiver, that is a gratuity extended to the operator. There are numerous reasons underlying that type of legislation, but we know of no holding—and counsel for the defense has not called any to our attention—which remotely suggests that self-incrimination is the sole reason for the liberalized enactments. We are not concerned with reasons having to do with civil litigation which might support the legislatures in requiring confidentiality of accident reports. What concerns us in this case is simply the power of the Commanding General of the United States Army in Europe to require one involved in a motor vehicle accident to take the first step. We will leave to future cases the extent to which subsequent steps must be taken. Accordingly, the regulation, insofar as it places a duty upon a driver to report an accident in which he is involved, is valid.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (concurring):

I agree with the Court's holding that the regulation which requires the reporting of a motor vehicle accident is valid. Here, the accused violated the regulation by failing to submit a report of the accident. Under these circumstances no Article 31 (Uniform Code of Military Justice, 10 USC § 831) question was in issue. Had the regulation been complied with, however, the Government, in my view, would not have been permitted to utilize the subject matter of the report in prosecuting the accused for other offenses which grew out of the accident itself. While I appreciate and am willing to accept the public policy reasons underlying promulgation of this type of regulation, I reject any notion that the information contained in the report could one day return to haunt the accused in a subsequent court-martial. In such a situation an Article 31 question would very definitely be present.