UNITED STATES

v.

**Technical Sergeant Willie HEYWARD, FR 249–76–0769, United States Air Force.**

**ACM 24138.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 24 June 1983.

Decided 23 Feb. 1984.

Appellate Counsel for the Accused: Colonel Leo L. Sergi and Captain Kathleen G. O'Reilly.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Major Robert E. Ferencik, Jr.

Before FORAY, SNYDER and O'HAIR Appellate Military Judges.

### DECISION

SNYDER, Judge.

We hold as to this issue, that a noncommissioned officer who has knowledge of an

airman's involvement with drug abuse and fails to report that drug abuse to a superior, or law enforcement authorities, may be convicted of dereliction of duty, in violation of Article 92, U.C.M.J., 10 U.S.C. § 892.

The accused stands convicted of dereliction of duty, use of marijuana, conspiracy to obstruct justice, and endeavoring to impede the administration of nonjudicial punishment, in violation of Articles 81, 92, and 134, U.C.M.J., 10 U.S.C. §§ 881, 892, 934. His sentence extends to a dishonorable discharge, confinement at hard labor for seven years, and accessory penalties.

The specific delict with which the accused was charged was willfully failing to report to proper authorities, the wrongful use of marijuana by Air Force members, as it was his duty to do. Appellate defense counsel urge that the findings of guilty of the dereliction charge and its specification be set aside and the charge dismissed. We decline to do so.

I

■■■ A person is derelict in the performance of duties when there is a willful or negligent failure to perform them, or when they are performed in a culpably inefficient manner. Manual for Courts-Martial, 1969 (Rev.), para. 171c. A duty may be imposed by regulation, lawful order, or custom of the service. M.C.M., *supra; United States v. Green,* 47 C.M.R. 727 (A.F.C.M.R. 1973), *pet. denied,* 48 C.M.R. 999 (1974). In the instant case, the duty breached was imposed upon the accused via regulation and custom of the service.

Air Force Regulation 30–2, Social Actions Program, 22 June 1981, paras. 3–18a and b, read as follows:

All Personnel:

a. Should encourage people known to have an existing or potential drug or alcohol abuse problem to seek assistance. *When abuse exists, the proper unit commander must be notified at once.* The commander must be fully advised of the circumstances, so that he or she may personally evaluate how the impact would affect the mission of the unit. (emphasis added)

b. *Report known or suspected incidents of illegal drug abuse to their immediate supervisor and unit commander, servicing security police agency, or local office of the AFOSI.*[1] (emphasis added) We have previously upheld the efficacy of AFR 30–2. *United States v. Grey,* 1 M.J. 874 (A.F.C.M.R.1976). The provisions set forth above clearly impose a duty to report known or suspected drug abuse.

The imposition of the duty to report is clearly reasonable and necessary for the discipline and security of the Air Force. The pernicious impact of drug abuse on military preparedness cannot be gainsaid. While writing on the issue of service-connection of drug offenses, Chief Judge Everett made the following observations in *United States v. Trottier,* 9 M.J. 337 (C.M. A.1980):

It has often been asserted, and as often acknowledged, that drug abuse in the military is a most serious problem. [citation omitted]

\* \* \* \* \* \*

As military equipment has become more sophisticated, there is the concomitant increased risk [from drug abuse] that an operator will be unable to handle the complicated weapons system with which he is entrusted and upon which his safety and that of others may depend.

\* \* \* \* \* \*

Indeed, in many instances the drugs will enter the military installation in their most lethal form—namely, when they are coursing through the body of the user.

\* \* \* \* \* \*

[T]he gravity and immediacy of the threat to military personnel and installations posed by the drug traffic *and by drug abuse* convince us that very few drug involvements of a service person will not be "service-connected." (emphasis added)

1. Air Force Office of Special Investigations.

*United States v. Trottier, supra,* 345, 349, 351. These principles were recently reemphasized in *Murray v. Haldeman,* 16 M.J. 74 (C.M.A.1983). The quoted passages above reflect the seriousness with which drug abuse in the military is viewed. Thus, the failure to report drug abuse is no trivial matter.

■ The importance of maintaining a disciplined, drug-free force is obvious. Consequently, the noncommissioned officer corps is an integral part of the deterrent effort. Air Force Pamphlet 50–34, MTS/PFE[2] Guide, 1 October 1982, Chapter 2, provides, in part, as follows:

> As an NCO you must discharge the following responsibilities:
>
> \* \* \* \* \* \*
>
> Maintain exemplary standards of behavior, including personal conduct, courtesy, loyalty, and personal appearance. *Exercise leadership by example* and be alert to correct personnel who violate these standards. (emphasis added)
>
> \* \* \* \* \* \*
>
> Observe, counsel, and correct subordinates on matters of duty performance, individual conduct, customs, courtesies, safety, and personal appearance both on and off duty.
>
> \* \* \* \* \* \*

The evidence of record amply demonstrates the accused's familiarity with all of the regulatory provisions set forth above.[3]

■ In addition to the duties imposed by regulation and training directives, are the duties imposed by custom. Indeed, the regulatory provisions flow from custom. Noncommissioned officers' authority to assist in the maintenance of order and discipline[4] is a recognition of their *responsibility* to do so and a means to aid in the discharge of that responsibility. Air Force Regulation 30–1, Air Force Standards, 4 May 1983, para. 6, states, in part, as follows:[5]

> You are also held accountable for your own actions, both in the performance of duties and in your personal conduct. If you are a supervisor, you must hold your subordinates accountable and take appropriate corrective actions when they do not fulfill their responsibilities.

Generally speaking, promotion to noncommissioned officer rank means an increase in rank, pay, privileges, and prestige. However, it means more than the extra stripe on one's sleeve. It is the assumption of a status; and commensurate with that status is the responsibility to assist in the maintenance of order and discipline.

It is abundantly clear that the accused had a duty to report those airmen whom he knew to be using marijuana, especially those who worked under his supervision. By willfully failing to do so, he was derelict in the performance of his duty.[6]

## II

■ At least three instances of the use of marijuana which the accused failed to re-

---

2. Military Training/Promotion Fitness Examination.

3. Since Air Force Regulation 30–2, Social Actions Program, is a general regulation, knowledge of its contents is presumed even though the accused was not charged with violating its provisions. Nonetheless, there was direct evidence of his having received training on AFR 30–2's contents during his in-processing.

4. The willful disobedience of the order of a superior noncommissioned officer, and assaulting or behaving with disrespect towards a noncommissioned officer while in the execution of his or her office, are punishable under Article 91, U.C.M.J. Additionally, noncommissioned officers are authorized to quell quarrels, frays, and disorders among airmen and to apprehend airmen who take part therein. Article 7, U.C.M.J., 10 U.S.C. § 807.

5. Although the preamble to this directive cautions against using it as a basis for charging a violation of Article 92(1), violation of a lawful general regulation, it states:

> The provisions of this regulation may ... be used as evidence of customs of the Air Force and duties of members in actions under the UCMJ.

6. We do not imply by our decision that this duty is confined solely to noncommissioned officers. However, today we address only the particular situation before us.

port were instances where he participated in the use of marijuana. Thus, appellate defense counsel argue that requiring the accused to report those instances would violate his right against self-incrimination under Article 31, U.C.M.J., UCMJ, Art. 831. We disagree.

The accused was not required to report his own drug abuse activities. He was required to report only the drug abuse activities of other airmen. Although reporting others could possibly lead investigative authorities to evidence of wrong doing by the accused, such a situation would be the result of the accused's own misconduct and not the result of the duty to report. Therefore, enforcement of the duty to report drug abuse is not violative of the right against self-incrimination. *See United States v. Kauffman,* 14 U.S.C.M.A. 283, 34 C.M.R. 63 (1963); *United States v. Smith,* 9 U.S.C.M.A. 240, 26 C.M.R. 20 (1958); *United States v. DeChamplain,* 1 M.J. 803 (A.F.C. M.R.1976).

### III

■ Appellate defense counsel next assert that the military judge gave an erroneous instruction on accomplice testimony. The trial judge gave the standard instruction on accomplice testimony. *See* Department of Army Pamphlet 27–9, Military Judges' Benchbook, May 1982, para. 7–10. However, he excluded the following language:

Additionally, the accused cannot be convicted on the uncorroborated testimony of a purported accomplice *if* that testimony is self-contradictory, uncertain, or improbable. (emphasis in original text)

The trial judge also excluded language to the effect that the testimony of an accomplice may not be corroborated by the testimony of another accomplice. Appellate defense counsel aver that the failure to include the referenced language prejudiced the accused.

The instructional language urged by counsel applies *only if* an accomplice's testimony may be found to be self-contradictory, uncertain, or improbable. The test is not met merely because there may be some inconsistency in the testimony of two or more accomplices' testimony. *United States v. Rehberg,* 15 M.J. 691 (A.F.C.M.R.), *pet. denied,* 16 M.J. 185 (1983). The trial judge specifically commented to trial and defense counsel that he did not view either of the accomplice's testimony as meeting the test. We agree fully with the ruling of the trial judge, for it is fully supported by the record. Since the testimony was not self-contradictory, etc., there was no legal necessity for corroboration. *See United States v. Rehberg, supra.*

The instructions as given fully advised the members to consider accomplice testimony with great caution. Additionally, the trial judge fully instructed the members on the criteria for assessing the credibility of witnesses. Thus, we discern little likelihood that the accused was prejudiced. *See generally United States v. Cavalier,* 17 M.J. 573 (A.F.C.M.R.1983); *United States v. Rehberg, supra.*

### IV

We have considered the other assignments of error and resolved them adversely to the accused.

### V

■ Finally, we find the sentence entirely appropriate. Considering all circumstances surrounding the offenses, we find the accused's transgressions to be aggravated. He not only allowed subordinates who worked directly under his supervision to use marijuana in his presence with impunity, he used marijuana with them. The accused then compounded his misconduct by undertaking to subvert the administration of military justice, including having one of his subordinates provide false testimony at an Article 15 punishment hearing. This was most serious misconduct and a severe failure of leadership by the accused. The prejudice to good order and discipline is patent.

The findings of guilty and the sentence are

AFFIRMED.

FORAY, Senior Judge, and O'HAIR, Judge, concur.