UNITED STATES, Appellee

v.

DONALD E. DOWNARD, Lieutenant Colonel,
U. S. Army, Appellant

1 USCMA 346, 3 CMR 80

No. 266

Decided April 28, 1952

LT. COL. George E. Mickel, U. S. Army, for Appellant.
LT. COL. Thayer Chapman, U. S. Army, and 1ST LT. Eugene L. Grimm, U. S. Army, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Petitioner was convicted by general court-martial of two specifications alleging conduct unbecoming an officer and a gentleman in violation of Article of War 95, 10 USC § 1567, and was sentenced to be dismissed from the service. The substance of the charge was that he had assaulted his wife and used obscene language toward her at about 11 p. m. outside the Fort Monroe Officers' Club, a semi-public place. We granted the petition for review upon the issue of whether error was committed by the law officer in the instructions given and refused relative to:

(a) the elements of the offense, and

(b) the findings and sentence.

We treat first the issue concerning the law officer's instructions as to the findings and sentence. It will be noted that the offense with which petitioner was charged occurred prior to May 31, 1951, the effective date of the Uniform Code of Military Justice. Trial was held subsequent to that date. Article of War 95, supra, states that one found guilty of conduct unbecoming an officer and a gentleman shall be punished by dismissal. On the other hand, Article 133 of the Uniform Code of Military Justice, 50 USC § 727, which now covers the offense herein charged, provides that the officer found guilty shall be punished as a court-martial may direct. Prior to the findings, defense counsel requested an instruction to the effect that, if the court found the accused guilty, a sentence of dismissal was not mandatory. The instruction was refused. Besides instructing on the elements of the offense, the law officer referred the court to "paragraph 158 of the 1951 Manual" for a discussion of lesser included offenses. After the findings, the law officer instructed the court, over defense objection, that dismissal was mandatory. The court sentenced pe-

**347**

titioner to dismissal although it is pertinent that six of the eight members recommended clemency.

The primary issue presented is whether, for this offense committed prior to May 31, 1951, but tried thereafter, the sentence of dismissal, as imposed by Article of War 95, supra, is mandatory, or whether the punishment shall be at the discretion of the court in accordance with Article 133 of the Uniform Code of Military Justice, supra. If the maximum ▇ punishment prescribed by the new Code is less than that fixed by the Articles of War, and if the offense occurred under the Articles of War but is tried under the Code, the new and not the old maximum punishment is applicable. United States v. Emerson No. (77), 1 USCMA 43, 1 CMR 43, decided November 14, 1951. Clearly if the new punishment were greater, it could not be applied retroactively to an offense committed prior to the effective date of the new Code. This would be an ex post facto application of the new Code and would violate Executive Order 10214, promulgating the Manual.

For the offense we are here considering, the change in permissible punishment fits neither of the above rules. Article 133 of the Code, by allowing assessment of punishment at the discretion of the court, would allow either a lesser or a greater punishment than dismissal, made mandatory by Article of War 95. Thus, under Article 133, an officer could be punished by a letter of reprimand or by dismissal and confinement. If the law officer had instructed the court that punishment should be in accordance with Article 133, this would be error since the court could not, as already noted, impose a sentence greater than dismissal. But the law officer could have instructed the court that they might assess punishment at their discretion, not in excess of dismissal.

We think a fair interpretation of the Uniform Code and Executive Order 10214, as well as readily ascertainable policy considerations require that an accused should be given the benefit of the possibly lesser sentence allowed by the new Code. Congress provided in the Uniform Code (Section 4, Public Law 506, 81st Congress) that offenses committed prior to the effective date of the Act "may be . . . punished . . . as if this Act had not been passed." Congress thus left it to the discretion of the President to prescribe the manner in which the new law should replace the old, as to offenses committed prior to May 31, 1951, but tried thereafter. The President, in Executive Order 10214, provided that the Manual for Courts-Martial would take effect "on and after May 31, 1951, with respect to all court-martial processes taken on and after May 31, 1951: . . . ." The only exception made was that offenses committed prior to May 31 would be "charged as" violations of the punitive Articles then in effect, but that the maximum punishment could not exceed that in effect when an offense was committed. We think this may fairly be interpreted to require that, if trial is held after May 31, the proceedings, including punishment, must be in accordance with the Manual for Courts-Martial, 1951, and the Uniform Code of Military Justice, with the one exception noted above.

This view is supported by civilian court decisions which have held that, for policy reasons, an accused is entitled to the ameliorating action of the legislature where a new law, in effect at the time of trial, reduces the maximum sentence for a crime committed prior to the effective date of that law. Lee v. State, 115 Tex Crim 429, 28 SW 2d 559; Hall v. State, 111 Tex Crim 381, 12 SW2d 1024. See Wharton, Criminal Law, Twelfth Ed, § 42. These policy considerations are persuasive also that an accused should be given the benefit of a new and lesser minimum punishment provision.

It is our conclusion, therefore, that the law officer erred in instructing the court that dismissal was mandatory. The prejudice resulting from such an erroneous instruction is clear.

Our decision on this issue is further strengthened by the instructions given

in addition to the law officer's statement that dismissal was mandatory. The court was referred to "paragraph 158 of the 1951 Manual" for a discussion of findings on lesser included offenses. This was incorrect since these offenses occurred prior to May 31, 1951, and the Articles of War and the 1949 Manual were therefore applicable as to possible lesser included offenses. Paragraph 78b of the 1949 Manual provides as follows:

"For example, in the case of an officer charged with a violation of Article 95 the court may not find him guilty of a violation of Article 96 in order to adjudge confinement, although, if the circumstances warrant, the court may properly find the accused guilty of a violation of Article 96 in such a case and adjudge dismissal or a lesser sentence."

The court may well have concluded that, since the law officer referred to the 1951 Manual for the law on lesser included offenses the above quoted paragraph could not be applied here. This reasoning, if adopted, would have deprived petitioner of the advantageous alternative of a finding of guilty of violation of Article 96 and a sentence possibly less than dismissal. But we need not decide whether the court did place this interpretation on the law officer's instructions. It is sufficient to say that this further points out the misleading character of the instructions given by the law officer in relation to the findings and sentence.

Taking this view on the erroneous and prejudicial nature of the law officer's instructions as to findings and sentence, it becomes unnecessary to consider the further issue raised as to the sufficiency of the instructions on the elements of the offense charged. The decision of the board of review is reversed and the case is remanded to The Judge Advocate General of the Army for further appropriate action.

Judge BROSMAN concurs.

Judge LATIMER, having disqualified himself, did not participate herein.