Richard E. KUBEL, Jr., Appellant,

v.

O. C. MINTON, Warden of the Federal Reformatory, Appellee.

No. 8008.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 4, 1960.

Decided March 3, 1960.

Charles W. Laughlin, Richmond, Va., for appellant.

Peter S. Wondolowski, Lieutenant Colonel, Washington, D. C., JAGC, Office of The Judge Advocate Gen. Dept. of the Army (Joseph S. Bambacus, U. S. Atty. and Cary L. Branch, Asst. U. S. Atty., Richmond, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and DALTON, District Judge.

DALTON, District Judge.

Richard E. Kubel, Jr., an American soldier, was tried by a duly constituted general court-martial sitting in Taegu, Korea, on June 19, 1951, on charges of stealing 80 blankets from the U. S. Government and selling them to a Korean national (in violation of the 94th and 84th Articles of War, 10 U.S.C. §§ 932, 908, respectively), and on the further charges of being absent without leave from his organization on two occasions in May of 1951, in violation of the 61st Article of War, 10 U.S.C. § 886. He was convicted of all four charges and sentenced to imprisonment for 10 years in a federal reformatory, and in addition was given a dishonorable discharge, with forfeiture of all allowances.[1]

The findings of the tribunal were approved by the Army Staff Judge Advocate, and also by a board of review in the office of the Judge Advocate General of the Army. An appeal was taken to the United States Court of Military Appeals, and again the proceedings and sentences were affirmed.

Appellant contends that he was denied due process of law through erroneous instructions to the court both on the blanket stealing charges, and also as to the two offenses of being absent without leave.

He appeals to this court from an order of the U. S. District Court for the Eastern District of Virginia denying appellant's petition for a writ of habeas corpus.

I. Instructions On Larceny

■ The Manual for Courts-Martial United States Army, 1949, enumerates the essential elements of the offense in:

1. Paragraph 181*h*: "Stealing, Larceny, Embezzlement, Misappropriation * * * of Military Property. * * * Proof.—Stealing (larceny and embezzlement). (a) (See 180g—Proof; and (b) that the property belonged to the United States and was furnished or intended for the military service thereof, as alleged."

2. Paragraph 180*g*: "Larceny * * * Proof.—(a) The appropriation by the accused of the property as alleged; (b) that such property belonged to a certain other person as named or described; (c) that such property was of the value alleged; and (d) the facts and circumstances of the case indicating that the appropriation was with the intent to deprive the owner permanently of his interest in the property or of its value or of a part of its value."

In the law officer's instructions on the offense of larceny, two elements were omitted, namely: "(c) that such property was of the value alleged; and (d) the facts and circumstances of the case indicating that the appropriation was with

<hr>

1. On March 11, 1953, the Secretary of the Army, by clemency action taken under the provision of Article 74, Uniform Code of Military Justice (10 U.S.C. § 874) reduced the appellant's sentence of confinement to a term of 6 years. The maximum release date of appellant for the 6-year sentence is August 15, 1961, and his minimum conditional release date is December 26, 1960. The expiration date is not earlier, because of several temporary releases on parole and returns for violation.

the intent to deprive the owner permanently of his interest in the property or of its value or a part of its value."

The record shows that the court made a finding of $519.04, as the value of the 64 blankets stolen. This value (over $50.00) carries the maximum penalty of 5 years imprisonment, a dishonorable discharge, and forfeiture of all pay and allowances. Similarly, the value of military property sold (over $50.00) carries the same penalty. Thus we do not see how Kubel's rights have been prejudiced by the failure of the law officer to more fully instruct on the value of the articles stolen.

As to the failure to instruct on the element of intent to deprive the owner permanently of the property, we need not decide whether the error was prejudicial. The point was raised in the Court of Military Appeals and there considered. Even if we disagree with its determination, the alleged error does not go to the jurisdiction of the court or to basic constitutional rights.

## II. Instructions On Maximum Sentence

The alleged error in the instructions of the law officer at the court-martial trial relating to the maximum sentence imposable for the two offenses of being absent without authority from the post of duty on two separate occasions prior to May 31, 1951, presents a more basic legal question.

The law officer's instructions charged that the maximum punishment for the offense was life imprisonment, dishonorable discharge and total forfeitures, basing his authority on the 61st Article of War, together with the President's Executive Orders.

Appellant contends that as the trial was held June 19, 1951, punishment for the offenses of absence without leave was governed by the Uniform Code of Military Justice, 10 U.S.C. § 856, which became effective May 31, 1951. The table of maximum punishments, contained in paragraph 127c, Manual for Courts-Martial, United States, 1951, 10 U.S.C. following section 856, which was the proper schedule of punishments under the new code, provided that the maximum punishment was confinement at hard labor for three days for each day of absence without authority,—or a total of 27 days in this case.

The Government maintains in the first place, that the instructions were proper; and secondly, that the instructions by the law officer are not matters within our scope of review on habeas corpus, since the question as to the permissible sentence was not raised in the Court of Military Appeals. It has been held that if an alleged error in a court martial proceeding was not brought to the attention of the military appellate court, it cannot be subsequently raised in the civil courts in a habeas corpus proceeding. Suttles v. Davis, 10 Cir., 1954, 215 F.2d 760; Bennett v. Davis, 10 Cir., 1959, 267 F.2d 15. Moreover, investigation convinces us that the instructions as to the permissible sentence were correct.

As to the propriety of the instructions, appellant cites an opinion of the United States Court of Military Appeals, United States v. Downard, 1 USCMA 346, 3 CMR 80 (1952), wherein the offense occurred prior to, but the trial took place after, the effective date of the Uniform Code of Military Justice.

Quoting from the opinion at p. 348:

"The primary issue presented is whether, for this offense committed prior to May 31, 1951, but tried thereafter, the sentence of dismissal as imposed by Article of War 95 [10 U.S.C. § 933], supra, is mandatory or whether the punishment shall be at the discretion of the court in accordance with Article 133 of the Uniform Code of Military Justice, supra. If the maximum punishment prescribed by the new Code is less than that fixed by the Articles of War, and if the offense occurred under the Articles of War, but is tried under the Code, the new and not the old maximum punishment is applicable." (Citing United States v.

Emerson, No. 77, 1 USCMA 43, 1 CMR 43, decided November 14, 1951. In the cited case the Court of Military Appeals established this rule for the first time.)

The Court of Military Appeals stated the following as a basis for the adoption of the rule, at page 348:

"This view is supported by civilian court decisions which have held that, for policy reasons, an accused is entitled to the ameliorating action of the legislature where a new law, in effect at the time of trial, reduces the maximum sentence for a crime committed prior to the effective date of that law. Lee v. State, 115 Tex. Cr. [R.] 429, 28 S.W. [2d 559; Hall v. State, 111 Tex.Cr.R. 381], 12 S.W. 2d 1024 * * *."

The Government correctly answers that the Downard decision does not apply here because the President had suspended the table of maximum punishments for offenses of absence without leave committed in the Far East. By Executive Order 10149, dated August 8, 1950, 15 Federal Register 5149, U.S. Code Congressional Service 1950, p. 1620, the President effected such suspension and on May 29, 1951, by Executive Order 10247, 16 Federal Register 5149, U.S. Code Congressional and Administrative News 1951, p. 1036, continued the suspension of limitations of sentence for absence without leave in the Far East. The effect of these suspensions is to leave the court martial free to impose the life sentence.

The appellant however argues that Order 10247, continuing the suspension of limitations upon sentences, is inapplicable, as the order covered only crimes committed after May 31, 1951, and the offenses here occurred prior to that date. Since Order 10149 suspended the maximum limits under the Articles of War only up to May 31, and since appellant was tried in June, the argument continues, the Downard decision prevents his being sentenced in accordance with Order 10149. The appellant, because of his reasoning that neither order is applicable, concludes that he was subject only to the maximum sentence allowable under the Uniform Code. This argument is completely fallacious. If it were not for the doctrine exemplified by the Downard case, the appellant would be subject to the maximum allowable punishment at the time of his offense, which was life imprisonment under Executive Order 10149. However, under the Downard ruling, if the punishment for an offense is lessened for crimes committed after a certain date, and if the defendant is tried after that date, he is given the benefit of the lesser maximum punishment as if his offense had occurred at the later date. In this case, if his offenses had been after May 31, 1951, he would still have been subject to life imprisonment under Executive Order 10247. There was no reduction in the maximum punishment allowable, and no amelioration arises under the Downard principle.

Because it is clear that there was no error in the law officer's instructions as to the maximum punishment, and because the alleged error, even if established, in the instructions concerning the elements of larceny would not entitle the appellant to release upon habeas corpus, it is not necessary to discuss the other reasons relied on by the Government for affirming the decision below. The District Court's denial of the appellant's petition for a writ of habeas corpus is

Affirmed.