UNITED STATES, Appellee

v.

CARL L. KELLEY, Seaman, U. S. Naval Reserve, Appellant

5 USCMA 259, 17 CMR 259

No. 5057

Decided December 3, 1954

CDR Robert W. Collins, USNR, for Appellant.
CDR Raymond W. Glasgow, USN, and ENS Mitchell W. Rabbino, USNR, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

At a prior trial, the accused was convicted by a special court of a number of offenses, including one of wrongfully communicating a threat to injure, in violation of Article 134, Uniform Code of Military Justice, 50 USC § 728. He was sentenced to be discharged from the service with a bad-conduct discharge. The findings of guilty and the sentence were disapproved by the convening authority because of certain errors. A rehearing followed. The accused was again convicted, and again sentenced to a bad-conduct discharge.

This conviction was affirmed by intermediate appellate authorities. We granted review to consider the following issues:

"1. Whether the instructions of the president on communicating a threat were inadequate.

"2. Whether error was committed by trial counsel in stating that the court must adjudge a bad conduct discharge or nothing."

After closing arguments by counsel, the president instructed the court on the elements of the offenses charged.

The instructions relating to the offense of wrongfully communicating a threat were: "(a) That the accused did or failed to do the acts, as alleged; and (b) the circumstances as specified." No exception was taken or objection made by defense counsel.

During the sentence procedure, trial counsel submitted the usual personal data concerning the accused, and evidence of previous convictions. The accused presented mitigation testimony in which he was described as "a very good worker, and a damn good sailor." Defense counsel also argued at length for a sentence which would permit the accused to leave the service under honorable conditions. He emphasized the accused's scheduled release to inactive duty, and the fact that the affair which gave rise to the offenses was due, in large measure, to the accused's emotional distress at the time. Trial counsel then addressed the court as follows:

"At this time it is my duty to inform the court of the sentence given the accused at the former hearing. The sentence was a bad conduct discharge. This court is limited to a sentence no more than a bad conduct discharge, since it cannot change the nature of the sentence. You are limited to a bad conduct discharge or nothing. I think to give Kelley anything but a bad conduct discharge would be a miscarriage of justice. To be found guilty of any one of these charges could result in a bad conduct discharge. Think of the effect on the Navy if a man could do the things he did and go free. The defense bases most of its evidence on what happened during the last four months. Certainly, when a man faces a bad conduct discharge he is bound to improve. But we are not concerned with that; we are concerned with punishing him for the offenses he committed. Perhaps punishment applied at the right time would affect him for the rest of his life so that he would realize he couldn't go against authority at any time.

"I would like to point out to the court that a bad conduct discharge from a special court-martial does not carry the same weight as a bad conduct discharge from a general court-martial; and it is up to the discretion of the Veterans Administration as to whether the man is deprived of benefits under the GI Bill when he receives a bad conduct discharge from a special. And, in most cases, they decide in favor of the man so that he receives a large portion of the benefits."

In due course, the president announced that the accused was sentenced to be discharged from the service with a bad-conduct discharge. The announcement was amplified by a reference to paragraph 76b (4) of the Manual for Courts-Martial, United States, 1951, in the following statement:

"In view of the fact that the proceedings in this case have constituted a rehearing and that the initial hearing resulted in a sentence to a bad conduct discharge alone, the court made inquiry and was informed that it was limited by the law and by interpretation of the law to the following choice of sentences in the event of a finding of guilty: (1) no sentence; or (2) a sentence to a bad conduct discharge. It is the opinion of the court that to award no sentence would constitute a gross miscarriage of justice."

For convenience, we consider first the sentence issue. At a rehearing, trial counsel should advise the court of the original sentence, and invite its attention to "any pertinent limitations upon its discretion in adjudging a new sentence." Manual for Courts-Martial, supra, paragraph 81d, page 132. Within the scope of the latter authority, it was undoubtedly proper for trial counsel to inform the court of the choices of sentence available to it. However, the accused now contends that trial counsel exceeded his obligation by improperly urging the court to impose a punitive discharge. It is unnecessary to consider the merits of this contention. Plainly, the court believed trial counsel's statement that it was legally bound to choose between a bad-conduct discharge or no punishment. The more fundamental question, therefore, is

whether other alternatives were open to the court. If such alternatives exist, trial counsel's advice to the court was erroneous. Manifestly, it was also so prejudicial to the substantial rights of the accused as to require reversal of the conviction. United States v. Downard, 1 USCMA 346, 3 CMR 80. Cf. United States v. Sippel, 4 USCMA 50, 15 CMR 50.

With certain exceptions which do not apply here, the sentence adjudged at a rehearing may not be "in excess of or more severe than the original sentence." Article 63(b), Uniform Code of Military Justice, 50 USC § 650. Clearly, the original sentence is only a permissible maximum, and the court may impose any sentence which is, in fact, less severe. The question, then, is whether there is any legal sentence which can properly be considered less severe than a bad-conduct discharge. The Government contends that there is none; it maintains that a bad-conduct discharge is "irreducible and unchangeable."

In United States v. Sippel, supra, we referred to the difficulty of ascertaining what punishment may be lesser than a punitive discharge. Although we made no attempt to enumerate lesser types of punishment, we did announce a general standard by which to compare the severity of elimination from the service with other punishments within the ambit of the court's power. We there said (page 59):

"... There are substitute punishments which could be imposed under Article 133 of the Code, 50 USC § 727, which every reasonable person would conclude are not greater than dismissal. These could have been considered, as the only limitation imposed on the court-martial by the Congressional change in punishment was that it could not adjudge a sentence which was greater than that which could have been imposed at the time the offense was committed."

Intelligent application of the Sippel rule to the facts of this case requires preliminary consideration of what other punishments a special court-martial may impose upon enlisted personnel. Under the Uniform Code of Military Justice, the maximum sentence that such a court can impose is a bad-conduct discharge, confinement not in excess of six months, and forfeiture of two-thirds pay per month for a like period. Article 19, Uniform Code of Military Justice, 50 USC § 579; Manual, supra, paragraph 15b, page 19. Within these limits, the Manual authorizes other sentences. Included among them is reduction to an inferior or intermediate grade, paragraph 126e; reprimand or admonition, paragraph 126f; and restriction to limits, paragraph 126g. The last is actually only "a deprivation of privileges." Without considering other possibilities, it can hardly be argued that any of these sentences is in excess of or more severe than a punitive discharge. In fact, there is such an obvious difference in severity between a bad-conduct discharge and each of the other punishments as to make discussion unnecessary.

Here, as in Sippel, the court's right to impose a lesser sentence than discharge is confused with commutation. The Government maintains that, on a rehearing, the only sentence that the court can adjudge is one which is lesser included in that previously imposed. On that premise, it seeks to limit the court to the same kind of action that a convening authority may take on his review of the sentence. It reasons that, since the convening authority cannot "mitigate" a bad-conduct discharge "to any other punishment," a court-martial is similarly confined in its action. See Manual, supra, paragraph 88c, page 148. The correctness of this construction of the convening authority's power need not detain us. Cf. Mullan v. United States, 212 US 516, 53 L ed 632, 29 S Ct 330. Suffice it to say that the issue before us is not the distinction between mitigation and commutation, and its consideration of whether one punishment is different in kind from that of another, but whether there are legal punishments less severe than a bad-conduct discharge which can be adjudged by a court-martial on a rehearing. In the latter connection, the Uniform Code does not limit the court to the imposition of such punishment as is necessarily included within the original sen-

tence; it requires only that the sentence adjudged on rehearing be not more severe than, or in excess of, that originally imposed. The Manual patently provides such lesser punishments. Consequently, both trial counsel and the court erred in assuming that the court had no alternative except a bad-conduct discharge, or no punishment. The error is prejudicial to the accused and requires reversal. United States v. Downard, supra.

In view of our disposition of the sentence question, it is unnecessary to consider the president's instructions on the elements of the offense of wrongfully communicating a threat.

The decision of the board of review is reversed and a rehearing is ordered.

Judge LATIMER concurs.

BROSMAN, Judge (concurring in the result):

The result reached by my brothers in this case strikes me as sound, for I am sure that there was at least one punishment—other than a bad-conduct discharge—legally imposable by the court-martial which tried the accused. I am afraid, however, that they have gone somewhat further than I can accompany them. Certainly they have gone further than they need.

II

I agree with the majority that paragraph 88c of the Manual—to the effect that a convening authority may not litigate a bare punitive discharge sentence to any other punishment—furnishes no useful analogy here. This restriction does not necessarily apply to the action of a court-martial on rehearing—for it is evident that a convening authority lacks certain of the powers possessed by any court-martial appointed by him. For example, he would not be permitted to utilize the Table of Equivalent Punishments—and thus he would lack at least one prerogative possessed by a military court in the first instance.

A much closer analogy, it seems to me, is implicit in the discussion found at page 125 of the current Manual's Legal and Legislative Basis. There it is pointed out that a convening authority, "unless he is the Secretary or the President (Art. 71), has no power to commute a sentence." But it is added that "If the sentence adjudged by the court is not divisible (e. g., death, dismissal), but the convening authority determines that the sentence, although legal, is too severe, he may return the record to the court for revision proceedings or he may recommend in his action that the sentence be commuted by the proper authority. See Form 37, Appendix 14c." (Emphasis supplied.) It seems manifest then that, in a revision proceeding, a change in sentence, not open to the convening authority, may be accomplished by a court-martial. A similar notion seems to have been applied by Judge Latimer in his Voorhees concurrence—for I believe his remand there was made with a view to the rendition of some sentence less severe than dismissal. See United States v. Voorhees, 4 USCMA 509, 541, 16 CMR 83. An earlier precedent pointing in somewhat the same direction is United States v. Sippel, 4 USCMA 50, 15 CMR 50, which is cited in the majority opinion.

How, though, may one determine what constitutes a sentence no more severe than a previously adjudged punitive discharge? The need for fixing a boundary definition is important, it seems to me, for the reason that a court-martial might well request—and be entitled to receive—an instruction in this particular. And the law officer—absent necessary guidance from this Court—would find himself in a difficult position in seeking to perform his duty to supply appropriate advice. Under the majority's approach—as I understand it—he would have no alternative to a response which would run about as follows: "Gentlemen, I am quite unable to advise you on this subject—beyond, of course, assuring you that there are numerous sentences less severe than one providing for a punitive discharge. You can do no more than guess—and subsequent reviewing agencies will set you right in due course, if needs be. Of course, they too will be required to guess seriatim—with the authority of last resort exercising the final choice." This—in the language of the story—

seems an unfortunately loose "way to run a railroad"!

Of course, I am sure that all reasonable men would agree that the loss of one day's pay must be regarded as a lesser punishment than separation from a military service by means of a bad-conduct discharge. But what of ten days? Or thirty? Or six months? And the same is true of confinement at hard labor for one day. But what of thirty days? Or six months? Or six years? Where is the line to be drawn? And is it enough that it may not be drawn in a particular instance with assurance until the case reaches this Court?

### III

It strikes me—and quite tentatively—that all punishments imposable by a court-martial must fall roughly under one or the other of five heads. The first of these is loss of life. Next comes loss of reputation—and archtypical of this category is the punitive discharge. The third takes the form of loss of money—usually pay and allowances—and the fourth consists of loss of physical freedom. Loss of military grade sounds in both income and reputation—but, since it differs from each of the related categories, it must be set down as a fifth class. It would seem to follow that it is open to a court-martial to find punishments, if any, no more severe than that previously adjudged *within* each category—but that its members may not go *outside* that category's limits. And why? For the plain reason that, as a logical proposition, one may not—one simply cannot, save for the roughest sort of practical purpose—compare chalk with cheese.

For purposes of administrative simplicity, therefore, I believe that no effort should be made here to equate wholly different types of penal action. For example, I doubt that any sort of confinement—or even restriction—should be viewed as no more severe than a punitive discharge, because of the impossibility of making any sort of accurate comparison between the two varieties of punishment. And the same may be said of fines or forfeitures. With respect to reduction in military grade, two comments seem apropos. As to officer personnel, no dismissal may be altered on rehearing to reduction in rank—for the reason this action would have been illegal had the court-martial taken it in the first instance, Article 71 (*b*), 50 USC § 658. In the case of Army and Air Force personnel, reduction to the lowest enlisted grade will always constitute a penal alternative on rehearing, for—in the absence of a departmental regulation to the contrary, like that found in the Navy—such a result is implicit in the original sentence to discharge. See United States v. Castner, 3 USCMA 466, 13 CMR 22. For the latter service, however—the one with which we are concerned in the present case—I would incline to believe that reduction in grade should not be deemed a punishment no more severe than a punitive discharge, and that it could not properly be adjudged under circumstances like those found here—no sentence to reduction having been imposed in the first instance.

Reference was made earlier to the presence of at least one lesser punishment available to the court which reheard the charges against the accused. This I believe to be a reprimand—which manifestly sounds in loss of reputation. I need go no further than this to agree with my brothers' result. I do not at all regard their broader approach as unreasonable. Viewed realistically and practically, I doubt that scarcely any punishment is more severe than a punitive discharge. However, I hesitate to commit the military establishment to the task of applying the concept they propose. They have elected to use the spectacles of realism and a rough-and-ready sort of practicality, while I have chosen those of logical analysis and what I believe to be a more orderly administration. I know of no reagent which can serve to determine which of us is correct. It may come down to a matter of whether one prefers chocolate or vanilla.