UNITED STATES, Appellee

v

BILLY R. HICKS, Private First Class, U. S. Army, Appellant

6 USCMA 621, 20 CMR 337

No. 6619

Decided February 3, 1956

*First Lieutenant Gene E. Overbeck* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Joseph L. Chalk* and *Captain Frank C. Stetson.*

*First Lieutenant Peter J. Hughes* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Thomas J. Newton.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

In a joint trial with Corporal Clyde Higginbotham, the accused was convicted of the offense of maiming, in violation of Article 124, Uniform Code of Military Justice, 50 USC § 718. He was sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for five years. Intermediate appellate authorities affirmed the conviction. We granted review to consider the correctness of the law officer's instructions.

No dispute exists as to the evidence. At about midnight on September 23, 1954, the accused, Higginbotham, and two other persons, proceeded to the tent of a Private Chun Fat. The accused intended to "poke him in the jaw," and thereby "get even" with him for the beating he had administered that afternoon to a Private Collins, the accused's "good friend."

Arriving at the tent, Higginbotham

**622**

and the accused entered. Their companions remained at the entrance. The accused located Private Fat's cot. Higginbotham momentarily put the beam of his flashlight on Private Fat, and Hicks hit him "pretty hard." The blow struck the victim in the eye. The resulting injuries were so serious that the eye had to be removed. Medical testimony presented by the prosecution indicated that the injury could not have been caused by a bare fist, but only by "some small instrument."

Over defense counsel's objection, the law officer instructed the court-martial as follows:

"The court is also advised that in maiming, the offense charged in the Specification, there is a requirement that the injury inflicted be serious and permanent. The offense of maiming only requires a general criminal intent to injure and does not require a specific intent to maim. Therefore

it could be no defense to a charge of maiming that the accused intended only a slight injury, if in fact, he did inflict serious harm."

The accused contends that this instruction is erroneous and prejudicial.

Appellate defense counsel have submitted a scholarly and informative brief which traces the history of the offense and sets out state statutes and court interpretations. We need not, however, review all the matter presented. Summarized, the accused's argument is that Article 124 is "practically a verbatim adoption" of the statutes in effect in New York, Washington, and Minnesota. The Supreme Court of the latter State has held that its statute requires an intent to inflict serious, permanent injuries, not "slight injuries or assaults, from which . . . [serious bodily injuries] are not naturally or reasonably to be expected." State v Hair, 37 Minn 351, 34 NW 893. Relying upon such cases as Capital Traction Co. v Hof, 174 US 1, 19 S Ct 580, 43 L ed 873, the accused further argues that when Congress enacted the same kind of statute as Minnesota, it intended to adopt that court's construction of the statute.

In United States v Sicley, 6 USCMA 402, 20 CMR 118, we referred to the danger of construing an ▇▇▇▇ ▇ article of the Uniform Code solely on the basis of state court decisions as to the meaning of the state statute upon which such article is modeled. We said that "we are wholly free from amenability to . . . [those] precedents, and experience no slightest hesitation in resolving the present problem in accordance with Congressional intent . . . regardless of civilian case law to the contrary."

Article 124 reads as follows:

"ART. 124. Maiming.

"Any person subject to this code who, with intent to injure, disfigure, or disable, inflicts upon the person of another an injury which—

(1) seriously disfigures his person by any mutilation thereof; or

(2) destroys or disables any member or organ of his body; or

(3) seriously diminishes his physical vigor by the injury of any member or organ;

is guilty of maiming and shall be punished as a court-martial may direct."

Read naturally the statute requires an intent merely to injure. No ambiguity is apparent. Consequently, it is unnecessary to invoke the rules of statutory construction. Russell Motor Car Co. v United States, 261 US 514, 43 S Ct 428, 67 L ed 778; Caminetti v United States, 242 US 470, 37 S Ct 192, 61 L ed 442. Nevertheless, the accused contends that the real meaning of the words "intent to injure" can be determined only by reference to the words "disfigure, or disable," which are associated with it. See: Morecock v Hood, 202 NC 321, 162 SE 730. We doubt not the usefulness of the principle of looking to the association of words for a determination of their meaning which is expressed in the maxim *noscitur a sociis.* However, the cases relied upon by the accused indicate that the maxim has relevance only in case of "a doubtful word." Morecock v Hood, supra, page 731. As the United States Supreme Court said in Russell Motor Car Co. v United States, supra, page 519:

". . . Rules of statutory construction . . . have no place . . . except in the domain of ambiguity . . . They may not be used to create, but only to remove, doubt."

See also: United States v Voorhees, 4 USCMA 509, 527, 16 CMR 83. But, even if we assume that the meaning of Article 124 is not readily apparent, the legislative background of the Article quite definitely establishes the natural meaning of the words used.

The commentaries of the draftsmen of the Uniform Code indicate that Article 124 is "broader in scope than common-law mayhem. It includes injuries which would not have the effect of making a person less able to fight." Hearings before House Committee on Armed Services, 81st Congress, 1st Session, on

HR 2498, page 1233. Clearly implied is an intention to include mayhem within the provisions of the Article. We should, therefore, logically expect to find that the requirements of proof of the offense of mayhem were not substantially changed.

In Brown v United States, 171 F2d 832, 833 (CA DC Cir) (1948), the United States Court of Appeals pointed out that, at common law, mayhem did not require a specific intent to inflict particular injuries; it was sufficient if the act was done "maliciously and willfully." Manifestly, if Article 124 is construed to require an intent to injure seriously, the requirements of proof of mayhem would be much more strict than at the common law. Thus, the scope of the offense would be materially lessened, rather than broadened. This result would be contrary to the declared intention of the draftsmen of the Article. It is apparent, therefore, that the legislative background of the Uniform Code also impels the conclusion that Article 124 requires no more than an intent to injure, not an intent to inflict serious injury.

The instructions of the law officer were correct. The decision of the board of review is affirmed.

LATIMER, Judge (concurring in the result):

I concur in the result.

The only important issue disputed in this case requires that we interpret Article 124 of the Uniform Code of Military Justice. The Chief Judge asserts categorically that the language used is clear and unambiguous, and obviously that is true if he limits ambiguity to the meaning of the one phrase "with intent to injure." However, when I consider the Article in its entirety, I am not so certain that we can dispose of the issue by merely stating that its wording is not open to construction. Some doubts concerning the will of Congress might arise in view of the fact that other expressions in the Article speak merely of injuries of the serious type. But pretermitting any canon of construction which might arise from association of phrases, ambiguity may arise otherwise than from fault of expression. DeSloovere, Extrinsic Aids in the Interpretation of Statutes, 88 U of Pa L Rev 527. It is to be remembered that the plain meaning rule of statutory construction presupposes that we are giving to the terms the meaning Congress attached to them at the time they were employed. In order to make that determination, I am required to look to the legislative history of the Article, and to use some rules of construction to ascertain the essential elements of the offense. However, when I measure the enactment by the aids which I consider apropos to this situation, I reach the conclusion that Congress intended to define the crime as requiring only an intent to injure.

I, therefore, join the Chief Judge in affirming the findings and sentence.