UNITED STATES, Appellee

v

WILLIAM A. SMITH, Staff Sergeant, U. S. Marine Corps, Appellant

12 USCMA 595, 31 CMR 181

No. 15,333
December 22, 1961

*Captain John P. Gibbons,* USN, and *Commander John D. Moroney,* USN, were on the brief for Appellant, Accused.

*Commander Benjamin H. Berry,* USN, and *Lieutenant Martin Drobac,* USNR, were on the brief for United States, Appellee.

## Opinion of the Court

FERGUSON, Judge:

The accused was originally tried by general court-martial on November 4, 1960, upon nine specifications of larceny by check, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921, and nine specifications of uttering worthless checks, in violation of Code, supra, Article 134, 10 USC § 934. Upon his pleas of guilty, he was convicted and sentenced to bad-conduct discharge and reduction to private. On January 24, 1961, a Navy board of review found accused's pleas improvident and ordered a rehearing. On February 15, 1961, the accused was again tried and again pleaded guilty. Once more, he was sentenced to bad-conduct discharge and reduction to private. On April 19, 1961, the board of review found that the law officer erred in instructing the court-martial that accused could only be sentenced to a bad-conduct discharge, reduction to private, and admonition or reprimand, "but no others." It ordered a rehearing on the sentence. On May 9, 1961, a third general court-martial sentenced the accused to bad-conduct discharge and reduction to the grade of private. This sentence was affirmed by intermediate appellate authorities, the board of review acting on July 14, 1961. We granted the accused's petition for review on the issue whether the law officer erred to his prejudice in his instructions on the question of sentence and in refusing to answer a question posed by a court member with relation to the penalty.

The law officer's instructions pertinent to the grant are as follows:

". . . However, the maximum sentence that may be adjudged in this case for the offense under Charge I, larceny by check, is a bad conduct discharge and reduction to the grade of private.

"You are also instructed that in this case a lesser type of punishment, in lieu of the punitive discharge and in addition to reduction, could include not only admonition or reprimand but also one or more of the following types of punishment: forfeitures, not to exceed the rate of two-thirds pay per month for the entire period adjudged; confinement at hard labor; hard labor without confinement not to exceed three months; or restriction to limits not to exceed two months. You are further advised, however, that you must determine, as reasonable persons, that in your judgment any sentence substituted in lieu of a bad conduct discharge is, in fact, of a lesser degree of severity than a bad conduct discharge."

Following completion of his charge, the law officer was asked several questions by a court member. One relating to accused's "net total monthly income" was apparently answered. The last question was:

"Can the court suspend its sentence predicated upon continued good performance of the accused" [?] [Appellate Exhibit 2.]

The law officer refused to answer the query.

The first issue before us deals with the accuracy of the law officer's instructions on the possible substitution of other punishments for the previously adjudged bad-conduct discharge and reduction. At the outset, we note it is distinctly arguable that the question is moot. Accused was in fact sentenced to a bad-conduct discharge and reduction. Thus, it would not appear that substitution of other punishments under the law officer's instructions ever came into play. Be that as it may, we are certain they were substantially proper. United States v Sippel, 4 USCMA 50, 15 CMR 50; United States v Kelley, 5 USCMA 259, 17 CMR 259.

In the *Sippel* case, the accused was convicted, *inter alia,* of a violation of Article of War 95, 10 USC (1946 ed) § 1567, which provided for a mandatory sentence of dismissal. At the time of his trial, however, Congress had enacted the Uniform Code and eliminated the necessity for dismissal upon conviction of conduct unbecoming an officer and a gentleman. Nevertheless, the law officer instructed the court-martial that for a violation of Article of War 95, the only punishment which might be adjudged was dismissal. In concluding that he erred, we stated, at page 59:

". . . There are substitute punishments which could be imposed under Article 133 of the Code, 50 USC § 727, which every reasonable person would conclude are not greater than dismissal. These could have been considered, as the only limitation imposed on the court-martial by the Congressional change in punishment was that it could not adjudge a sentence which was greater than that which could have been imposed at the time the offense was committed."

In United States v Kelley, supra, the accused was originally sentenced to a bad-conduct discharge. At a subsequent rehearing, the court-martial was informed its punitive powers were limited to adjudication of a bad-conduct discharge or nothing. In holding this advice prejudicial, we adverted to our rationale in United States v Sippel, supra, and stated, at page 262:

". . . Suffice it to say that the issue before us is not the distinction between mitigation and commutation, and its consideration of whether one punishment is different in kind from that of another, but whether there are legal punishments less severe than a bad-conduct discharge which can be adjudged by a court-martial on a rehearing. In the latter connection, the Uniform Code does not limit the court to the imposition of such punishment as is necessarily included within the original sentence; it requires only that the sentence adjudged on rehearing be not more severe than, or in excess of, that originally imposed. The Manual patently

provides such lesser punishments. Consequently, both trial counsel and the court erred in assuming that the court had no alternative except a bad-conduct discharge, or no punishment."

The foregoing decisions clearly indicate the propriety of the law officer's instructions, quoted above. Indeed, it was the absence of such advice which led the board of review to order the last rehearing on sentence. In light of these precedents, we are satisfied the law officer did not err in so informing the members of the existence of possible alternative penalties.

Our conclusion with regard to the second issue similarly does not necessitate reversal. Here, we are concerned with the law officer's refusal to inform a court member that the tribunal did not possess the authority to suspend a sentence. The defense argues that our decision in United States v Samuels, 10 USCMA 206, 27 CMR 280, requires that this be held prejudicially erroneous. There, the court trying the accused sentenced him to confinement, forfeitures, reduction, and a suspended bad-conduct discharge. The law officer acquiesced in the announced punishment and did not advise the court that it could not suspend execution of a punitive discharge. Of his failure so to advise the members, we stated, at page 211:

"In view of the remarks by the president of the court-martial, made against the backdrop of the accused's commendable naval record, *if the court-martial had been advised that the sentence was void and that the attempt to suspend the bad-conduct discharge was not binding upon the convening authority, it may well have adjudged a sentence which did not include a bad-conduct discharge.*" [Emphasis supplied.]

The same reasoning is, however, not applicable to the record now before us. The court-martial was in- █ formed that it might permissibly consider alternative punishments lesser in degree than a bad-conduct discharge. Yet, it announced a sentence including the lat-

ter penalty and made no attempt to include a provision for its suspension. This distinction, as the Government points out, is material. While the law officer should have informed the members of their inability to suspend a sentence, the fact that they did not seek to employ that authority indicates beyond cavil that the refusal to answer the question did not affect the accused. Accordingly, we are of the view that the failure to answer the question was not prejudicial.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

Judge KILDAY concurs in the result.