UNITED STATES, Appellant and Cross-Appellee

v

ROBERT F. JOHNSON, Private First Class, U. S. Army, Appellee and Cross-Appellant

12 USCMA 640, 31 CMR 226

No. 15,467

February 23, 1962

*Captain Alvin B. Fox* argued the cause for Appellant and Cross-Appellee, United States. With him on the brief were *Lieutenant Colonel James G. McConaughy* and *Major Francis M. Cooper.*

*Captain Richard A. Baenen* argued the cause for Appellee and Cross-Appellant, Accused. With him on the brief was *Captain Ralph T. Smith.*

## Opinion of the Court

FERGUSON, Judge:

The accused was tried by general court-martial and, upon his plea, was found guilty of absence without leave, in violation of Uniform Code of Military Justice, Article 86, 10 USC § 886. He was sentenced to be confined at hard labor for one year and to forfeit all pay and allowances. Upon review, the staff judge advocate concluded that the sentence was "correct in law and fact" but, because of accused's "propensity for becoming absent without authority, the nature of the civil offense committed by him while absent without leave [using an automobile without the owner's permission], and his poor record of conduct while in confinement," an opinion was expressed that he had demonstrated his "lack of suitability for retention in the Army." Accordingly, the staff judge advocate recommended "commutation" of the sentence from confinement at hard labor to a punitive discharge. A copy of the review was served on the accused on June 17, 1961, and he expressed approval of the proposed change in sentence, requesting that it be effected and that he be released from confinement.

On July 18, 1961, the convening authority acted upon the record in accordance with his staff judge advocate's recommendation. Approving the sentence adjudged, he "commuted" it to a bad-conduct discharge.

On September 19, 1961, the board of review concluded the convening authority's action on the sentence was illegal in that it increased the severity of the penalty. It set aside his action and ordered the record of trial forwarded to another convening authority for preparation of a new post-trial review and action.

Based upon the action of the board of review, The Judge Advocate General of the Army has certified the following question:

"WAS THE BOARD OF REVIEW CORRECT IN HOLDING THAT, AS A MATTER OF LAW, THE ACTION OF THE CONVENING AUTHORITY IN THIS CASE INCREASED THE SEVERITY OF THE SENTENCE ADJUDGED?"

**641**

A few preliminary observations are in order before we proceed to determine the ultimate answer █ to this issue. First, we apprehend from the Government's brief and the position of both sides on oral argument a belief that the resolution of the question before us does not involve consideration of the factor whether the accused desired or consented to the change in the sentence. Except insofar as it may bear upon his counsel's performance of duty on appeal, we agree with this conclusion. Whether the convening authority may change a sentence of confinement and forfeitures to a punitive discharge is an issue which must be resolved without regard to the accused's desires. There is language to the contrary in the principal opinion in United States v Christensen, 12 USCMA 393, 30 CMR 393, but we call attention to the fact that the relative position of the Judges in that case requires that it be regarded as expressing only the view of the author Judge.

In United States v Russo, 11 USCMA 352, 29 CMR 168, this Court had before it the issue whether a death sentence might be changed to dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for life or a lesser term. Reviewing the pertinent authorities, we found that only our opinions in United States v Freeman, 4 USCMA 76, 15 CMR 76, and United States v Goodwin, 5 USCMA 647, 18 CMR 271, squarely held that the nature of a punishment could not be changed in reducing it to what was deemed an appropriate penalty. Our re-examination of these decisions was in light of the Congressional purpose in providing that a convening authority had the duty to approve only that sentence which "he in his discretion determines should be approved," Code, supra, Article 64, 10 USC § 864, and that a board of review in like manner could only approve such punishment as it "finds correct in law and fact and determines, on the basis of the entire record, should be approved," Code, supra, Article 66, 10 USC § 866. It was concluded

that these appellate authorities had been granted the power to change one classification of punishment to another of lesser degree in order to affirm an appropriate sentence, and it is important to note that no particular label was attached to this process, the Court being satisfied to determine, upon the basis of an overwhelming demonstration of legislative intent, that:

". . . [W]hether it be termed commutation, mitigation, or merely a reduction in punishment, . . . both the convening authority and a board of review have the authority to lessen the severity of a death penalty by converting it to dishonorable discharge and confinement at hard labor." [United States v Russo, supra, at page 358.]

The second case which came before us involving a change in the nature of punishment in order to make it appropriate was United States v Plummer, 12 USCMA 18, 30 CMR 18. There, an accused officer had been sentenced to dismissal and forfeiture of all pay and allowances. In his action, the convening authority approved the sentence but, in view of the accused's prior good record and his apparently sincere repentance, recommended that the dismissal be commuted to an administrative discharge under conditions other than honorable. We found the action ambiguous. It was arguable either that the convening authority had found the dismissal appropriate and recommended a change in its characterization to a class with which he was not empowered to deal or that he had found a punitive separation inappropriate but was unaware of his authority to lessen its severity under United States v Russo, supra. Accordingly, we ordered the record of trial returned for a new review and action in light of the Russo case.

The last opinion in which we had occasion to concern ourselves with this problem is United States v Christensen, supra. There, an officer was sentenced to be reprimanded and suspended from rank for twelve months. In acting on the record, the convening authority affirmed the reprimand but

changed the suspension from rank for twelve months to forfeiture of $25.00 per month for a like period. The board of review affirmed. Upon certification to this Court, Judge Latimer, in a lengthy opinion, set forth his views and ultimately concluded that the sentence approved by the convening authority was a permissible alternative to that adjudged by the court-martial. For a variety of reasons, which need not be accorded *post hoc* treatment here, the Chief Judge and I disassociated ourselves from our brother's rationale and concurred only in the disposition which his opinion ordered.

From the foregoing cases, a number of principles helpful to the resolution of the issue before us may be gleaned. First, and most importantly, we have consistently emphasized that we here deal with the power of the convening authority and the board of review to make a determination regarding the appropriateness of a particular sentence with due regard to the accused and the crimes of which he has been convicted. Congress did not think it wise to attach labels to this process, for attempts so to classify changes in sentences tend to bring into play technical niceties and narrowly based distinctions which are completely at odds with the legislative intent to have the sentence reassessed at various levels until it fits the particular offender. In short, Congress desired intermediate appellate authorities to look again at the penalty adjudged *and reduce the severity of its impact until it was deemed appropriate.* Code, supra, Articles 64, 66.

Secondly, in both *Russo,* supra, and in *Plummer,* supra, the sentence was one which, if deemed inappropriate, could not be reduced in kind. Accordingly, the appellate authorities were apparently faced with the choice of either approving the punishment which had been adjudged or indulging in the rarely seen process of disapproving the entire penalty. Cf. United States v Speller, 8 USCMA 363, 24 CMR 173, and United States v Atkins, 8 USCMA 77, 23 CMR 301. The decisions in the cited cases merely pointed out that Congress had afforded a broader choice of alternatives. Compare United States v Sippel, 4 USCMA 50, 15 CMR 50, and United States v Kelley, 5 USCMA 259, 17 CMR 259.

Thirdly, in each case, it had been determined below, or was at least left in doubt, that the sentence adjudged was inappropriate for the accused and his offenses.

Finally, in each case, it was clearly indicated that the convening authority and the board of review, in taking such action with respect to the sentence, must thereby lessen its severity. It is axiomatic that exercise of appellate authority on the sentence may not increase its impact and if the change in form of penalty is to be equally damaging, it would follow that there was no need to alter the sentence, for that adjudged would logically be as appropriate as that sought to be imposed on appeal. In short, neither the convening authority nor the board of review may change the nature of a penalty merely because that sought to be approved is administratively more convenient than that imposed by the court-martial. Thus, it may appear desirable to a convening authority to convert an adjudged sentence which did not extend to a punitive discharge into one which effects such a separation rather than either to retain an accused in confinement for a lengthy period or to invoke separate administrative discharge proceedings. That he may not so combine his judicial and administrative authority scarcely requires extended citation of authority. See United States v Simpson, 10 USCMA 229, 27 CMR 303, and United States v Armbruster, 11 USCMA 596, 29 CMR 412.

With these guidelines in mind we turn to the certified question. At the outset, it is apparent there are several reasons for agreeing with the conclusion of the board of review. Thus, we note that the convening authority found the adjudged punishment appropriate but nevertheless changed its

**643**

nature because it seemed more convenient for the service to have accused punitively separated. We also call attention to the fact that the sentence to confinement and forfeitures, here found to be appropriate, might have been reduced in kind in order to lessen its severity. Putting these factors to one side, however, we prefer to approach the problem principally from the standpoint taken by the board.

The board of review reasoned that a convening authority might not commute a sentence from confinement and forfeitures to a bad-conduct discharge because so to act would permit circumvention of 10 USC § 3811, which commands that:

"(b) No enlisted member of the Army may be discharged before his term of service expires, except—

(1) as prescribed by the Secretary of the Army;
(2) by sentence of a general or special court-martial; or
(3) as otherwise provided by law."

We agree with the board's rationale. The statute in question expressly and unequivocally prohibits the discharge of individual members of the Army except by affirmative action of certain authorities. Provision is made for such action "by sentence of a general or special court-martial." This obviously and directly refers to the adjudication of punitive discharges, the only sort of separations which may form a part of military sentences. United States v Phipps, 12 USCMA 14, 30 CMR 14. The only meaning which we can draw from the explicit language of the statute is that, in order to be a valid penalty, the sentence itself must expressly include direction of the discharge. And, as we have many times noted,

". . . If the words used in the statute convey a clear and definite meaning, a court has no right to look for or to impose a different meaning. . . . 'a plain and unambiguous statute is to be applied, and not interpreted, since such a stat-ute speaks for itself, and any attempt to make it clear is a vain labor and tends only to obscurity.'" [United States v Dickenson, 6 USCMA 438, 449, 20 CMR 154, 165.]

See also United States v Hicks, 6 USCMA 621, 20 CMR 337.

Nor does it appear that our decisions in United States v Russo, supra, and United States v Bigger, 2 USCMA 297, 8 CMR 97, are inconsistent with the application of the statute's prohibitory language to the situation before us. In both cases, the accused were sentenced to be put to death. While nothing was said about dishonorable or bad-conduct discharge, it is quite obvious that every legal and appropriate punishment is included within the supreme penalty. Thus, when the board of review acted in the *Bigger* case to affirm findings of guilty of unpremeditated murder and a sentence which included a dishonorable discharge, it did no more than to approve a lesser included penalty just as it might have, in an appropriate case, reduced an expressly adjudged dishonorable discharge to a bad-conduct discharge. Our interpretation of Code, supra, Article 66, expressly recognized and accorded effect to this principle by reference to the *Bigger* opinion and adoption of the position taken by the Chief Judge in United States v Goodwin, 5 USCMA 647, 18 CMR 271. We are convinced, therefore, that these holdings offer no impediment to our adoption of the position taken by the board of review in this case.

Unlike the death penalty, it should be equally clear that a sentence to confinement at hard labor and forfeitures does not, by implication, include a punitive discharge to which the penalty might be reduced. The truth of this proposition may be demonstrated by a comparison of the two latter punishments—a process which inevitably leads to the conclusion that the dishonorable or bad-conduct discharge may not be so classified.

Confinement at hard labor involves placing a military accused under phys-

ical restraint in a designated facility and there requiring him to perform such tasks as may be lawfully assigned. Code, supra, Articles 9, 58, 10 USC §§ 809, 858; United States v Dunn, 9 USCMA 388, 26 CMR 168. When the accused's term of imprisonment is over, he is entitled to be returned to duty with his armed service, unless, of course, it has in the meantime ended his military status administratively. Indeed, it is the purpose of the Army's fine disciplinary barracks system to use confinement in such a way that, where possible, the prisoner is restored to society as one willing and able to abide by its mores. See, generally, Herrod, *The United States Disciplinary Barracks System*, Military Law Review, April 1960 (Department of the Army Pamphlet 27–100–8), pages 35, 36.

Further, it is certain that the damage visited upon an accused by a sentence to confinement may not involve the serious consequences of a punitive discharge. As we have on occasion noted, a bad-conduct discharge affects entitlement to those benefits which a grateful nation has made available to individuals who have served it honorably. United States v Quesinberry, 12 USCMA 609, 31 CMR 195. And see Lerner, *Effect of Character of Discharge and Length of Service on Eligibility to Veterans' Benefits*, Military Law Review, July 1961 (Department of the Army Pamphlet 27–100–13), page 121. Moreover, the ineradicable stigma of a punitive discharge is commonly recognized by our modern society, and the repugnance with which it is regarded is evidenced by the limitations which it places on employment opportunities and other advantages which are enjoyed by one whose discharge characterization indicates he has been a good and faithful servant. Indeed, we have implicitly recognized that its burden may exceed that of confinement to the extent that we have approved an instruction which permitted a court-martial on rehearing to adjudge this physical restraint in lieu of a former sentence to a bad-conduct discharge. United States v Smith, 12 USCMA 595, 31 CMR 181. And it was noted by the late Judge Brosman, in United States v Kelley, supra, at page 264, that:

". . . Viewed realistically and practically, I doubt that scarcely any punishment is more severe than a punitive discharge."

We agree that a punitive discharge is a severe punishment, and we are reinforced in our conclusion by the attitude of the Congress through the postwar years. It has demonstrated uncommon concern for punishments extending to dishonorable or bad-conduct discharges. Thus, aside from judicial review under the Code, it has provided administrative machinery in the form of discharge review boards and boards for the correction of military and naval records to insure that these iniquitous penalties receive continuing and unremitting attention. 10 USC §§ 1552, 1553. This, and the other considerations outlined above, indicate the propriety of our belief that punitive discharges are not lesser included in confinement and forfeitures.

In sum, then, we hold that the board of review properly decided that the convening authority's action was illegal. We emphasize particularly the fact that he had before him a sentence which he, in fact, found appropriate, but which, if inappropriate in amount, could have been reduced in kind. Thus, it would clearly appear that his resort to a change in the nature of the sentence overreached the scope of Code, supra, Article 64. United States v Russo, supra; United States v Plummer, supra. More importantly, however, the sentence which he approved contravened 10 USC § 3811, supra, and his action, therefore, went beyond his judicial authority.

The certified question is answered in the affirmative, and the decision of the board of review is affirmed.

Chief Judge QUINN and Judge KILDAY concur.