**UNITED STATES**

v.

**Sergeant Jose R.L. CAVALIER, FR 564–92–5245 United States Air Force.**

**ACM 24013.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 7 April 1983.

Decided 9 Nov. 1983.

Appellate Counsel for the Accused: Colonel George R. Stevens and Captain Bruce T. Brown.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Lieutenant Colonel Andrew J. Adams, Jr.

Before FORAY, CANELLOS and SNYDER, Appellate Military Judges.

## DECISION

SNYDER, Judge:

Contrary to his pleas, the accused was convicted by general court-martial of wrongful possession and distribution of marihuana and of violating a lawful general regulation by possessing drug abuse paraphernalia. His sentence extends to a bad conduct discharge, confinement at hard labor for one year, detention of $425.00 per month for three months for a period of 12 months, and reduction to airman. He has assigned three errors for our consideration. Finding no prejudice to any of the accused's substantial rights, we affirm.

## I

■ Appellate defense counsel have called our attention to a request by trial defense counsel that the military judge give an instruction on informer testimony.[1] A brief recitation of the facts will place the issue in perspective.

After her husband, Airman L, was identified as a drug abuser, Mrs. L presented herself to the local Air Force Office of Special Investigations (AFOSI) Detachment. In hopes of salvaging her husband's career, she agreed to cooperate with the AFOSI by assisting them in identifying and apprehending military persons involved with illicit drugs in and around Little Rock Air Force Base, Arkansas. She revealed her own extensive involvement with the illegal possession and distribution of marihuana and other illicit drugs. Because of her extensive involvement, she was also assisting the local civilian police authorities in identifying civilian drug dealers. All of these matters were brought to the attention of the members.

The accused was charged with four instances of distribution. On all but one of those occasions, the drug transactions occurred under the supervision of special agents of the local AFOSI. During the period between the various transactions, a special agent was frequently present at Mrs. L's residence during her telephone contacts with the accused where they could hear her end of the conversation.

The last distribution, which involved five pounds of marihuana, occurred in Mrs. L's residence while special agents were concealed therein.

The accused's defense was entrapment. He judicially admitted to the smaller distributions, claiming they were made because Mrs. L led him to believe she was interested in a sexual relationship with him, and that she made numerous requests of him for

drugs. He made the same claim relating to the five pounds, but also admitted that he decided he needed the money to pay a number of debts.

Relying on our decision in *United States v. Rehberg,* 15 M.J. 691 (A.F.C.M.R.), *pet. denied,* 16 M.J. 185 (1983), the military judge refused to give the requested instruction, ruling that his instruction on the credibility of witnesses would adequately present the issue to the court members.

In *Rehberg, supra,* we called attention to the fact that accomplices form the only group of witnesses to whom a mechanical test of measuring credibility is applied. After observing that certain other witnesses whose testimony was possibly suspect were nevertheless evaluated under normal rules of witness credibility, we stated:

> . . . [I]t defies logic to engraft additional credibility requirements on the testimony of accomplices. Although an instruction that an accomplice's testimony should be viewed with great caution *could* be given if requested, we do not believe that it is required. (emphasis added)

*United States v. Rehberg, supra* at 694.

We agree with the reasoning of the military judge; namely, this logic applies even more so to the testimony of an informant who was working under the supervision of a law enforcement agency. The fact that the instruction was specifically requested does not alter the result we reach.

The case *sub judice* is an excellent example of the fact finders assessing witness credibility without the "benefit" of a special instruction, *i.e.,* instructions on accomplice or informant testimony. As mentioned earlier, only one of the charged transactions occurred without the supervision of AFOSI special agents. Otherwise, Mrs. L's testimony was corroborated in its material aspects.[2]

---

1. The requested instruction reads as follows: One of the witnesses, Mrs. Rema [L], is what is termed in law as an informer. The testimony of an informer, or any witness whose self-interest or attitude is shown to be such as might tend to prompt testimony unfavorable to the accused, should always be considered with caution and weighed with great care. (citation omitted)

2. The evidence and the findings fairly support the inference that the members assessed Mrs. L's testimony with circumspection. The 10 December 1982 transaction provides a clear ex-

It is apparent that the members followed the trial judge's instructions on assessing witness credibility. Accordingly, we hold that the military judge did not abuse his discretion in refusing to give an informant instruction notwithstanding the defense counsel's request. *United States v. Rehberg, supra.*

## II

■ The accused also avers that the military judge erred by refusing a requested instruction on sentence to the effect that a dishonorable or bad conduct discharge is a more severe punishment than confinement at hard labor for one year and total forfeitures. We disagree.

The Manual for Courts-Martial, 1969 (Rev.), para. 125, requires that a court-martial adjudge a legal, appropriate, and adequate punishment, with due regard for the requirements of the code. Neither the manual nor the Code attempts to establish an equivalent punishment for either of the authorized punitive discharges. *See* M.C.M., paras. 126a, 76a (3) and (4), and 127.

M.C.M., para. 127c(2) discusses the Table of Equivalent Punishments as follows:

Substituted punishments are of importance chiefly in *cases of minor offenses.* By substituting additional forfeitures or hard labor without confinement, the accused will be adequately punished but will not be prevented from performing his regular duties. (emphasis added)

With one exception which will be discussed *infra,* the only time a court-martial should be concerned with equivalency and possible substitution of punishments is when assessing a sentence for a minor offense. The accused in the instant case was hardly charged with minor offenses.

■ The exception referenced above concerns rehearings. Article 63(b), U.C.M.J., 10 U.S.C. § 863(b), requires that the sentence at a rehearing not be in excess of or more severe than the original sentence, unless the sentence is based upon findings of an offense not considered upon the merits in the original proceedings, or unless the sentence prescribed for the offense is mandatory. To comply with this mandate, a court-martial for a rehearing must, of necessity, be instructed on the fact that other punishments may be substituted in lieu of a punitive discharge. *United States v. Kelley,* 5 U.S.C.M.A. 259, 17 C.M.R. 259 (1954); *United States v. Sippel,* 4 U.S.C.M.A. 50, 15 C.M.R. 50 (1954).

However, the cases involving rehearings only require that the members be instructed that the maximum punishment which may be adjudged is a punitive discharge, or dismissal, and that any substitute punishment must, in fact, be less severe than a punitive discharge. None of those cases require that the members be instructed on what punishment or combination of punishments will constitute a less severe punishment than a punitive discharge. *United States v. Smith,* 12 U.S.C.M.A. 595, 31 C.M.R. 181 (1961); *United States v. Kelley; United States v. Sippel,* both *supra; cf. United States v. Darusin,* 20 U.S.C.M.A. 354, 43 C.M.R. 194 (1971); *United States v. Brousseau,* 13 U.S. C.M.A. 624, 33 C.M.R. 156 (1963).

■ Another reason for upholding the judge's refusal to give the requested instruction is that it does not reflect an accurate statement of the law. Its incorrectness may be gleaned from the precedents analyzing the commutation powers of intermediate appellate authorities, *i.e.,* convening authorities.

■ The unequivocal rule of commutation is that the commuted punishment must be less severe than the punishment imposed at trial and one which a court-martial can adjudge. *United States v. Johnson,* 12 U.S. C.M.A. 640, 31 C.M.R. 226 (1962); *United*

---

ample. The supervising special agent testified that, due to the unavailability of a female special agent, they searched Mrs. L as thoroughly as decency would allow prior to her going to the accused's residence. They related that any effort to conceal the marihuana on her person would have been detected because of its bulkiness. However, they conceded the possibility, albeit remote, that Mrs. L could have concealed quaalude pills from their search. The accused was acquitted of the specification alleging distribution of quaaludes.

*States v. Russo,* 11 U.S.C.M.A. 352, 29 C.M.R. 168 (1960). Historically, it has generally been the act of substituting another type punishment for a punitive discharge that has raised the question of what constitutes a lesser punishment. It is an area not susceptible to a neat table of equivalency.

Many judges and counsel have voiced Judge Brosman's comment in *United States v. Kelley, supra,* which was: "Viewed realistically and practically, I doubt that scarcely any punishment is more severe than a punitive discharge." However, he also noted the difficulty in attempting to equate various punishments by stating as follows:

And the same is true of confinement at hard labor for one day [being lesser than a punitive discharge]. But what of thirty days? or six months? Or six years? Where is the line to be drawn?

*United States v. Kelley, supra* at 264. (Brosman, J., concurring).

Past cases addressing this issue have taken an *ad hoc* approach to the issue of what is lesser than a punitive discharge. *See United States v. Christensen,* 12 U.S.C.M.A. 393, 30 C.M.R. 393 (1961). The one constant has been a refusal to try and promulgate a hard and fast rule of equivalency. A brief review of selected quotes reflects this philosophy.

*United States v. Sippel, supra* at 58: What punishment may, or may not, be lesser than a dismissal is difficult to ascertain, and particularly is that true when converting that punishment to fines, forfeitures, and other penalties.

*United States v. Prow,* 13 U.S.C.M.A. 63, 32 C.M.R. 63, 64–65 (1962):

Changing . . . the punitive discharge to confinement lessens the severity of the punishment. How far we can carry the analogy need not detain us. Suffice it that the period of confinement approved by the Board of Review is well within the limits defined in the earlier cases.

In *Prow,* the Board of Review had commuted a bad conduct discharge to confinement at hard labor for three months and forfeiture of $30.00 per month for three months.

*United States v. Darusin, supra* at 196: The variety of factors bearing upon the relative severity of a punitive discharge and other punishments has tended to discourage the establishment of a fixed table of substitutions.

When confronted with the issue of whether a commuted punishment is less severe than the original punishment, the Court of Military Appeals and the Courts of Military Review have not endorsed a particular punishment. Although a punitive discharge may be commonly believed to be equivalent to confinement at hard labor for one year, such is not necessarily the case.

*United States v. Johnson, supra,* held that an attempt to commute a sentence of confinement at hard labor for one year and total forfeitures to a bad conduct discharge illegally increased the severity of the sentence originally imposed by the court-martial. Reversing the logic of *Johnson,* our predecessor Board of Review concluded that commuting a bad conduct discharge to confinement at hard labor for eight months and accessory penalties constituted a lesser punishment. *United States v. Owens,* 36 C.M.R. 909 (A.F.B.R.1966). *United States v. Darusin, supra,* commented on *Owens* as follows:

Inferentially, [*United States v. Johnson*] supports the view that a reverse substitution, that is, replacement of an adjudged punitive discharge with confinement at hard labor for one year, would not increase the severity of the sentence.

The Court referenced *Owens, supra,* but declined to comment on its correctness.

This Court has reemphasized the absence of a fixed table of substitution in the not too distant past. *United States v. Carrier,* 50 C.M.R. 135 (A.F.C.M.R.1975). Although we approved the commutation of a bad conduct discharge to confinement at hard labor for 12 months, it is clear from our language that we were assessing the circumstances before us at the time.

The *Johnson, Owens, Darusin, Carrier* quartet have probably contributed to the misconception that a bad conduct discharge

578

is, under all circumstances, equivalent to confinement at hard labor for one year.

A careful review of the precedents will reflect that confinement itself will not necessarily be less severe than a punitive discharge under *all* circumstances. There are subtle caveats such as, substituting a period of confinement for a punitive discharge does not *ordinarily* produce an increase in severity. *United States v. Brown,* 13 U.S.C.M.A. 333, 32 C.M.R. 333 (1962). Also, the damage of confinement *may* not involve the consequences of a punitive discharge. *United States v. Johnson, supra.*

Consequently, to interject such a fluid issue into a court's sentence deliberation is akin to improperly interjecting the question of inapplicable collateral consequence of a sentence. *See United States v. Cleckley,* 8 U.S.C.M.A. 83, 23 C.M.R. 307 (1957).

Accordingly, we hold that in an original proceeding, it is improper to instruct the court that a punitive discharge is equivalent to a certain period of confinement or any other accessory penalty. Existing instructions on the severity of a punitive discharge ensure that a sentence to a punitive discharge is imposed by an enlightened court.

We have considered the accused's remaining assignment of error and find it to be without merit. *United States v. Kronawetter,* 16 M.J. 653 (A.F.C.M.R.1983).

The findings of guilty and the sentence are

AFFIRMED.

FORAY, Senior Judge, and CANELLOS, Judge, concur.