## UNITED STATES

v.

**Casey L. McGREW, Lance Corporal (E–3), U.S. Marine Corps.**

**NMCM 98 01751.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 16 April 1998.

Decided 28 April 2000.

LCDR Linda J. Lofton, JAGC, USN, Appellate Defense Counsel.

CAPT Ben J. Piazza, JAGC, USNR, Appellate Defense Counsel.

LT Margaret E. Jolly, JAGC, USNR, Appellate Government Counsel.

Before DORMAN, Senior Judge,
TROIDL, Senior Judge, and ROLPH,
Appellate Military Judge.

DORMAN, Senior Judge:

The appellant stands convicted by a special court-martial consisting of a military judge sitting alone. At trial the appellant plead guilty to a one-day unauthorized absence and intentionally missing movement of his ship. The military judge determined that the appellant's pleas were providently entered and found the appellant guilty consistent with his pleas. The appellant's offenses violated Articles 86 and 87, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 887. The approved sentence includes confinement for 75 days, reduction to pay grade E–1, and a bad-conduct discharge. The sentence to confinement in excess of 30 days was suspended in accordance with the terms of the appellant's pretrial agreement.

We have carefully reviewed the record of trial, the appellant's four assignments of error, and the Government's response. We find that the appellant's conviction for unauthorized absence is multiplicious with his offense of missing movement through design, and that the appellant is entitled to sentencing relief. Following our corrective action, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant remains. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### The Facts

The appellant was attached to the 13th Marine Expeditionary Unit on board the USS PELELIU when it pulled into Darwin, Australia, for a liberty call in February 1998. Upon arrival in Darwin, the appellant's com-

manding officer advised him of the approximate time the ship would be lifting anchor on 3 February 1998. On 2 February, the appellant caught the liberty boat with two other Marines from his unit, Lance Corporals Biezad and Priest, and went ashore. That evening, instead of returning to the ship, they spent the night at the home of a female acquaintance they had met in Darwin. The next day, 3 February, when the USS PELELIU set sail, the appellant and his two shipmates were not on board. That afternoon, the appellant called back to Camp Pendleton to obtain instructions on how to return to his unit. Following those instructions, the three Marines surrendered to Australian military authorities on 4 February. Upon his return to Camp Pendleton, the appellant spent 49 days in pretrial restriction.

Charges against all three Marines were eventually referred for trial by special courts-martial by the same convening authority. All three were court-martialed for a one-day unauthorized absence and for missing movement of the USS PELELIU by design. Those were the only charges that LCpl Priest faced. Consistent with his plea, LCpl Priest was convicted and sentenced to 45 days confinement, forfeiture of $250 pay per month for 2 months, and reduction to E–2. The same military judge who sentenced the appellant sentenced LCpl Priest. LCpl Biezad was also charged with an orders violation for possessing drug paraphernalia, and the possession and use of anabolic steroids. LCpl Biezad was convicted, consistent with his pleas, of all 5 offenses. A different military judge sentenced him to confinement for 45 days, forfeiture of $600 pay per month for one month, and reduction to E–2.

In addition to the unauthorized absence and the missing movement offenses, the appellant was charged with, and convicted of, an orders violation concerning his failure to properly sign out on liberty from the ship. The military judge sentenced the appellant to 75 days confinement, forfeiture of $617 pay per month for 3 months, reduction to E–1, and a bad-conduct discharge. In taking his action, the convening authority dismissed the orders violation and reassessed the sentence

by not approving the forfeitures. This reassessment, however, provided no meaningful relief because the appellant was already on appellate leave by the time the action was taken, and some of the forfeiture was imposed before the appellant's appellate leave began. Additionally, when he took action in the appellant's case the convening authority did not indicate what action he took in the courts-martial of LCpls Priest and Biezad.

### Companion Cases

In his first assignment of error, the appellant argues that his bad-conduct discharge is inappropriately severe. The appellant highlights the fact that this was his first offense (and a relatively minor one), that he had served honorably for a year-and-a-half, his proficiency and conduct marks averaged 4.4/4.4, and that he had received the Armed Forces Expeditionary Medal, the Sea Service Deployment Ribbon, and the Rifle Sharpshooter Badge. The appellant also argues that his sentence is highly disparate from the sentences imposed in the closely related cases of LCpls Priest and Biezad. He also asserts that, since the cases are closely related and since there are no good or cogent reasons for the disparity in his sentence when compared to the other two, we should set aside his bad-conduct discharge. Appellant's Brief of 18 August 1999 at 4–8. The appellant's second assignment of error is related to the first. There, he argues that under the Manual of the Judge Advocate General, § 0151(A)(2),[1] at the time the convening authority acted in his case, he was required to state what action he took in the cases of LCpls Priest and Biezad. Appellant's Brief of 18 August 1999 at 8–10.

In response, the Government argues that the appellant's sentence is appropriate, and that the three cases are not closely related. The Government clearly takes issue with the appellant's suggestion that his misconduct was not that severe. The Government argues that the "appellant's complete disregard for the detrimental effect that his missing movement had on his command's operations, the increased workload of his shipmates, and the manpower used to return him to his unit

---

1. Judge Advocate General Instruction 5800.7C (Ch–3, 27 July 1998).

warranted his discharge." Government Brief of 18 January 2000 at 4. While the Government's argument is intuitively accurate, we find no evidence in the record to support it. The Government argues that even if the cases are closely related, the sentences are not highly disparate.

In raising the issue of sentence disparity, the appellant has the burden of "demonstrating that any cited cases are 'closely related' to his ... case and that the sentences are 'highly disparate.'" *United States v. Lacy*, 50 M.J. 286, 288 (1999). In assessing whether cases are closely related, our superior court looks to such issues as "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or *some other direct nexus between the servicemembers whose sentences are sought to be compared.*" *Lacy*, 50 M.J. at 288 (emphasis added). Additionally, in *United States v. Kelly*, 40 M.J. 558, 570 (N.M.C.M.R.1994), we defined "closely related cases" as those cases that "involve offenses that are similar in both nature and seriousness or which arise from a common scheme or design." Applying these criteria, we find that the appellant has met his burden of demonstrating that his case is closely related to those of LCpls Biezad and Priest.

We next consider whether the appellant has met his burden of demonstrating that the sentences are highly disparate. In making this determination, it is appropriate to consider the potential maximum punishment for each accused. We note that all three Marines were tried by special courts-martial and each faced the same jurisdictional maximum punishment. Only the appellant, however, was awarded the "ineradicable stigma" of a punitive discharge, with the incumbent difficulties it carries as one attempts to reenter civilian society. *United States v. Ohrt*, 28 M.J. 301, 306 (C.M.A.1989); *United States v. Johnson*, 12 U.S.C.M.A. 640, 31 C.M.R. 226, 231, 1962 WL 4400 (1962). Particularly considering the qualitative difference in the sentences in these three closely related cases, we find that the appellant has met his burden of demonstrating that the sentences are highly disparate.

Having met his burden of proof, the appellant may be entitled to relief if the Government cannot demonstrate "a rational basis for the disparity," *Lacy*, 50 M.J. at 288, or, provide "good and cogent reasons" for the disparity. *Kelly*, 40 M.J. at 570. We do not find a rational basis or good and cogent reasons for the disparity in this case.

The Government suggests several "good and cogent" reasons for the disparity in sentences. It cites the following factors: LCpl Biezad was tried by a different military judge; both LCpls Biezad and Priest made unsworn statements expressing remorse and a desire to remain in the Marine Corps; LCpl Priest had no pretrial agreement; and LCpl Biezad submitted clemency matters to the convening authority. Government Brief of 18 January 2000 at 7. We are not convinced that these are good and cogent reasons.

First, the fact that a different military judge tried Biezad is insignificant, because the same convening authority convened all three cases. Furthermore, it is one of the functions of this court to review a case for sentence appropriateness, to include "relative uniformity." *Lacy*, 50 M.J. at 288. Second, the fact that one accused submitted clemency matters to the convening authority is also insignificant. The appellant was awarded the most severe sentence of the three Marines, before "clemency" became an issue. Finally, we look at the issues of extenuation and mitigation [E and M] at trial. While we recognize that both LCpls Biezad and Priest presented more extensive cases in E and M than did the appellant, we do not find that that alone is a good and cogent reason for the sentence disparity in these cases. This is particularly so where LCpl Biezad was also convicted of the use and possession of anabolic steroids, and the possession of drug abuse paraphernalia. We find the most significant difference in the three cases is that the appellant was the only one who requested a bad-conduct discharge. The reason for this request, however, was to "get home quickly because my family needs me." Record at 37. His request, however, should not be the sole reason for the punitive discharge. *United States v. Evans*, 35 M.J. 754, 761

(N.M.C.M.R.1992). In comparison to the cases of LCpls Biezad and Priest, that request seems to have been the deciding factor in this case.

Based upon our discussion above, we find that it was error for the convening authority to fail to address the actions he took in the cases of LCpls Biezad and Priest, when he took action in the appellant's case. As we noted in *United States v. Ortiz*, 52 M.J. 739 (N.M.Ct.Crim.App.2000), the purpose of the requirement to list actions taken in companion cases is to help ensure that an informed decision is made. Furthermore, we find that the appellant is entitled to sentencing relief based upon disparity in sentencing. Accordingly, we will grant appropriate relief in our decretal paragraph.

### Multiplicity

The appellant contends that his unauthorized absence is multiplicious for findings with his missing movement by design in this case. The Government concedes error. We concur. *United States v. Olinger*, 47 M.J. 545, 552 (N.M.Ct.Crim.App.1997). We will provide relief in our decretal paragraph.

### Conclusion

Accordingly, we disapprove the guilty findings to Charge I and its Specification, alleging a one-day unauthorized absence from his unit, and order that Charge and Specification dismissed. We affirm the guilty findings to the remaining Charge and its supporting Specification, alleging a violation of Article 87, UCMJ, for missing the movement of his ship by design on 3 February 1998. In light of our action on findings, and in consideration of our finding of sentence disparity in this case, we reassess the sentence. We do so in accordance with the principles of *United States v. Cook*, 48 M.J. 434 (1998), *United States v. Peoples*, 29 M.J. 426, 428 (C.M.A. 1990), and *United States v. Sales*, 22 M.J. 305, 307–08 (C.M.A.1986).

Upon reassessment of the sentence, we approve only so much of the sentence as extends to confinement for 60 days and reduction to pay-grade E–1.[2] A new promulgating order, reflecting the findings and sentence as modified by this decision, shall be issued.

Senior Judge TROIDL and Judge ROLPH concur.

---

**2.** Our reassessment of the sentence moots Assignment of Error III, which alleged that a bad-conduct discharge was inappropriately severe in this case.